## BOARD OF COUNTY COMMISSIONERS OF OKLAHOMA COUNTY v. STATE INDUSTRIAL COMMISSION et al.

No. 25095.    May 1, 1934.

Lewis R. Morris, Co. Atty., and B. C. Logsdon, Asst. Co. Atty., for petitioner.

Leo J. Williams, and Paul Arnold, for respondent Fred R. Johnson.

CULLISON, V. C. J. This is an original proceeding before this court by the board of county commissioners of Oklahoma coun-

ty, Okla., petitioner, to review an award of the State Industrial Commission made and entered on September 15, 1933, in favor of Fred R. Johnson, claimant.

The petitioner, board of county commissioners, contends that:

The Industrial Commission, having, on August 2, and 10, 1933, made an order denying claimant compensation, was without jurisdiction to make the order complained of (August 25th).

That said order is "void because no legal evidence of any kind or character had been presented to the Commission showing, or tending to show, a change in condition since the decision of August 2nd."

The record discloses that:

On February 7, 1933, claimant filed his first notice of injury with the Commission, which said form 3 reads in part:

"Full name of injured employee: Fred R. Johnson.

"Address: 915 N. W. 5th Street, Oklahoma City.

"Occupation of claimant: Laborer.

"Married or single: Married.

"Name of employer: Oklahoma county.

"Date of accident: April, 1932.

"Where did accident occur: Oklahoma county, Okla.

"Cause of accident: Grease and foreign bodies in both eyes.

"Nature and extent of injury: Loss of vision in left eye. * * *

"Date quit work on account of injury: April, 1932. * * *

"What was your average daily wage: $120 per month. * * *

"Did you suffer loss of a member or loss of use of a member: Loss of vision.

"If loss of use, is such loss temporary or permanent: Partial permanent.

"Did you request your employer to furnish medical attention: Yes.

"Has he done so: Yes.

"Name of attending physician: Dr. Harper Wright and Dr. Canada.

"(Signed) Fred R. Johnson."

On February 10, 1933, the attending physician filed his report, which reads in part:

"Name of injured person: Fred R. Johnson.

"Address: 216 North Klein.

"Date of accident: May 28, 1932, at 11:00 A. M.

"Was first treatment rendered by you? Yes. * * *

"Who furnished necessary medical supplies: Dr. Harper Wright. * * *

"Give an accurate description of the nature and extent of the injury: Infection in upper right eyelid.

"Describe treatment: Sodium borate.

"Are symptoms from which he is suffering due entirely to this injury: Yes.

"Is he able to attend to any part of present or any other occupation: Yes. * * *

"State in patient's own words how accident occurred: Foreign body dropped in right eye while he was under tractor.

"Attending physician: Dr. Harper Wright. Address: 240 West Commerce. Date: Feb. 9, 1933."

On March 10, 1933, the first hearing was had. Another hearing was had on April 21, 1933. At these various hearings in said cause the following testimony of the following named witnesses was had:

Dr. J. W. Shelton, physician and surgeon, specializing in eye, ear, nose, and throat, testifies as follows:

"A. I examined him (claimant) on two different occasions. Q. What was the date of your first examination? A. I examined him on more than two different occasions. I examined him first on February 18, 1933, and on April 8, and on April 10, 1933. * * * Q. Will you state please the history and your findings upon examination? A. * * * His eyes continued to be inflamed for about three months. * * * Q. What per cent. of loss of visual acuity would that be in each eye, Doctor? A. 20/50 is equivalent to 23½; 20/200 is equivalent to 80 per cent. Q. Doctor, after your three examinations, what was your opinion as to what caused this loss of vision? A. * * * It would be my opinion it could have been the result of such an injury he described. * * * Q. Eliminating everything, Doctor, it would be your opinion the loss of vision started from the injury? A. * * * It would be my opinion that the loss would be the result of the injury he described. * * * Q. Did you determine in your opinion for it upon your examination? A. I couldn't determine any reason except that this corneal cloudiness could have been the result of the hot oil."

Dr. Fred B. Hicks, physician, specializing in eye, ear, nose, and throat, testifies as follows:

"Q. * * * What would you say has caused this man's loss of vision? A. I would have to

say I thought the accident was the cause of it. * * * Q. Doctor, what was his visual acuity? A. The right eye was 20/50 and the left eye was 20/200. Q. You say his vision was 20/50 in the right eye and 20/200 in the left eye? A. Yes, sir. Q. Doctor, under the Snellen table, what per cent. of loss would that be to each eye? A. 20/50 I believe is 23 and a fraction; 23½. 20/200 I think, is 80 per cent. loss. Q. Doctor, is that per cent. of loss permanent in your opinion? A. Yes, sir."

Claimant, Fred R. Johnson, testified as follows:

"Q. Mr. Johnson, you are the claimant in this case? A. Yes, sir. Q. Following this alleged injury you went to some doctor at Capitol Hill, did you not? A. Yes, sir. Dr. Canada. * * * Q. I will ask you to state whether or not you ever discussed further treatment with any employee of the county who had authority to employ and fire men or see you got medical care? A. After I left Dr. Canada's office, Mr. McIntyre took me over there and I told him Canada never got all of that out of my eyes, he said, 'Maybe it is water he put in there.' He said, 'If it isn't better tomorrow, I will take you to a specialist.' The next day I don't know whether he came, but the next day or the day after and I asked him about it and he said he was in a hurry to get over to Wheatland and he would be but a day or two. I jumped him again and he was in a hurry again. I don't know that time where he was going, but he told me he would take me to a specialist. I told him they were still sore. The fact of the matter you could see that; they still felt like there was sand or grit in them. Q. Your eyes were red and inflamed for some time? A. Yes, sir. Q. Mr. McIntyre, your foreman, promised on several occasions to take you to an eye specialist but never did? A. Yes, sir."

On May 29, 1933, at another hearing held by the Commission, Dr. Clayton Canada, general practitioner, associated with Dr. Harper Wright, the county physician, testified as follows:

"Q. When did you first meet him? A. I treated his eyes on 5-30 and '32. Q. May 30, 1932? A. Yes, sir. * * * Q. Of what was he complaining when he came to see you, Doctor? A. Said a foreign body dropped in his eyes while he was on (under) a tractor. * * * Q. Did you give him any treatment at that time? A. Yes, sir. How did you treat him? A. I washed the eye out with sodium boric solution and gave him some of the same solution to use. * * * Q. What was the nature of your examination on last Friday? A. Last Friday I examined the eye and also his vision. Q. What did you find as a result of that examination? A. That in his right eye, vision is about 20/60 and in his left eye it is very very poor, about 20/40. Q. What does 20/50 represent, Doctor? A. That means the usefulness of it is diminished about a third. * * *"

Dr. Harper Wright, county physician, testified as follows:

"Q. When did you next see the claimant, Doctor? A. The next time I saw him was when he came over some time of last week, Monday I believe it was, examination of his eyes at that time, I tested his vision and found that his left eye had 20/400; the right 20/60, and also I looked at the conjunctiva of both eyes at that time."

On August 2, 1933, after several hearings, the Commission made the following order (omitting caption):

### "Order

"Now, on this 2d day of August, 1933, the State Industrial Commission being regularly in session, this cause comes on for consideration pursuant to a hearing at Oklahoma City, Okla., before Commissioner Fred H. Fannin, on March 10, 1933, another hearing on April 21, 1933, May 12th and 29th, 1933, to determine liability and extent of disability, at which hearings the claimant appeared in person and by Paul Arnold and Leo J. Williams, the respondent appearing by B. C. Logsdon; and the Commission, after reviewing the testimony taken at said hearings, examining all the records on file, and being otherwise well and sufficiently advised in the premises, finds:

"(1) That in April, 1932, the claimant was in the employment of respondent and engaged in a hazardous occupation subject to and covered by the provisions of the Workmen's Compensation Law; and that on said date he alleges he sustained an accidental personal injury, arising out of and in the course of his employment, by getting grease and foreign bodies in both eyes.

"The Commission is of the opinion that the evidence is insufficient to show that the disability to claimant's eyes is due to the alleged injury.

"It is therefore ordered: That compensation be and it is hereby denied.

"FHF: MT

"Upon the adoption of the foregoing order the roll was called and the following voted aye:

"Doyle, Chairman.
"McElroy, Commissioner:
"Fannin, Commissioner."

On August 8, 1933, the claimant filed a motion to review, requesting the Commission to review the facts and make an order allowing him an award for his injury to his eyes (plural).

On August 10, 1933, the Commission again denied claimant compensation.

On August 25, 1933, the Commission set aside the orders of August 2, and 10, 1933, and set the cause for further hearing at Oklahoma City on September 5, 1933.

Pursuant thereto, on September 6, 1933, another hearing was had, at which testimony was adduced.

The first witness sworn to testify was W. S. Johnson, a groceryman, who testified as follows:

"Q. The only thing you know with reference to his condition during that period was what he told you? A. I could tell from the shape of his eyes, how they were, and his eyesight. Q. What condition did you find to exist? A. Well, my goodness, he would ask me to look up numbers for him, and every time he came in with a grocery list, I had to read it for him."

Dr. A. L. Guthrie, physician specializing in eye, ear, nose, and throat, testified, in substance, as follows: The doctor gives the history of the injury as told him by the claimant. He then testified that he found a loss of vision in claimant's right eye of 20/50 and left eye 20/200, or the equivalent of 23.5 per cent. and 80 per cent., respectively. The doctor testified. "It is my opinion the loss of vision is due to the accident and is permanent."

Dr. Theodore G. Wails, physician, specializing in eye, ear, nose and throat, testified, in substance, that claimant's loss of vision is 23.5 per cent. in right eye and 80 per cent. in left eye.

Dr. Clayton Canada testified as follows:

"Q. When did you first test his eyes for vision? A. May 29, 1933. Q. What loss was it you found at that time? A. The right eye was 20.60, and the left was 20/400. Q. That would be about 30 per cent. and 90 per cent. A. Approximately, yes."

On the 15th day of September, 1933, the State Industrial Commission made its final order and award, the pertinent parts of which are in words and figures as follows, to wit (omitting caption):

"Order.

"Now, on this 15th day of September, 1933, the State Industrial Commission being regularly in session, this cause comes on to be considered pursuant to a hearing at Oklahoma City, Okla., on March 10, 1933, before Chairman Thos. H. Doyle, and again on April 21, May 12, May 29, and September 6, 1933, before Commissioner Fred H. Fannin, and at which hearings the claimant appeared in person and by Leo Williams and Paul Arnold and the respondent by B. C. Logsdon, and the Commission after examining all the records on file, and reviewing the testimony taken at said hearings, and being otherwise well and sufficiently advised in the premises, makes the following findings of fact:

"(1) That on the 28th day of May, 1932, the claimant was in the employment of said respondent and engaged in a hazardous occupation subject to and covered by the provisions of the Workmen's Compensation Law, and that on said date said claimant sustained an accidental injury, arising out of and in the course of his employment, to wit, an injury to his eyes.

"(2) That the average monthly wage of the claimant at the time of said accidental injury was $120 per month.

"(3) That the claimant did not lose any time beyond the five days' waiting period by reason of said accidental injury, and continued to work.

"(4) That the nature of said injury was that the claimant got grease, oil, and foreign bodies in both eyes.

"(5) That the respondent had actual notice of said injury within the 30 days' statutory period, and furnished medical treatment to the claimant's eyes.

"(6) That by reason of said accidental injury, the claimant has suffered 23.5 per cent. permanent partial loss of vision or sight to his right eye and 80 per cent. permanent partial loss of vision or sight to the left eye.

"The Commission is of the opinion: That under section 7290, paragraph 1, Compiled Oklahoma Statutes, 1921, as amended by the Session Laws of 1923, the loss of both eyes constitutes permanent total disability, for which the compensation is provided under the law, for a period of 500 weeks. That under section 7290, subsection, 3 for percentage loss of use of sight of an eye, is provided in the schedule for the loss of a member or sight of an eye, which the partial loss of use thereof bears to the total loss of use of such member or sight of an eye; that 23.5 per cent. loss of vision of the right eye and 80 per cent. loss of vision of the left eye, would be equivalent to 51.75 per cent. loss of both eyes, and that claimant is entitled under the law to compensation at the rate of $18 per week, for a period of 258.75 weeks, in the total sum of $4.657.50.

"It is therefore ordered: That within 15 days from this date, the respondent pay to the claimant the sum of $564, or 31 weeks and two days' compensation at the rate of $18 per week, computed from February 7, 1933, to September 14, 1933, and to continue paying the claimant compensation at the rate of $18 per week until a total of $258.75 has

been paid, in the sum of $4,657.50, on account of 23.5 per cent. loss of vision of the right eye, and 80 per cent. loss of vision in the left eye. * * *"

The order in question (August 25, 1933) was one made on the Commission's own motion, setting aside its orders of August 2nd and 10th, both of which had been made within 30 days of the order complained of. We find from the record that the evidence fully warrants the award of compensation by the Commission as set out in the above and foregoing order. The award is affirmed.

RILEY, C. J., and SWINDALL, ANDREWS, McNEILL, OSBORN, BAYLESS, and WELCH, JJ., concur. BUSBY, J., not participating.